UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| PAMELA J. TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:05-CV-00277 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Pamela J. Townsend appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying Townsend's application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"). (Docket # 1.)  The appeal was referred to the undersigned Magistrate Judge on October 30, 2006, by District Judge Theresa Springmann for the issuance of a Report and Recommendation. (Docket # 12.)

Having reviewed the record and pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(d)(1), the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner for further proceedings in accordance with this opinion.  This Report and Recommendation is based on the following facts and principles of law.

## I.  PROCEDURAL HISTORY

On February 7, 2003, Townsend applied for DIB, alleging that she became disabled as of May 1, 2002. (Tr. 14, 43, 48.)  The Commissioner denied her application initially and upon reconsideration, and Townsend requested an administrative hearing. (Tr. 31-32.)  On November 8, 2004, Administrative Law Judge ("ALJ") Frederick McGrath conducted a hearing at which Townsend, who was represented by counsel, her father, and a vocational expert testified. (Tr. 227-46.)

On February 25, 2005, the ALJ rendered an unfavorable decision to Townsend, concluding that she was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (Tr. 11-20.)  The Appeals Council denied Townsend's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5, 6-10.)  On August 11, 2005, Townsend filed a complaint with the district court, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  PLAINTIFF'S ARGUMENTS

Townsend purports three errors in the Commissioner's final decision.  Specifically, Townsend contends that the ALJ erred by: (1) failing to consider her father's testimony in making his credibility determination; (2) rendering a credibility determination that was not supported by substantial evidence; and (3) failing to consider as evidence her receipt of Indiana Medicaid benefits. (Br. in Supp. of Pl.'s Compl. to Review Decision of Commissioner of Social Security Administration ("Opening Br.") at 4-13.)

### III.  FACTUAL BACKGROUND[1]

At the time of the ALJ's decision, Townsend was forty-six years old, had a high school education, and had past relevant work experience as a store manager, inspector, troubleshooter, cashier, and packer. (Tr. 43, 54, 73-80.)  Townsend alleged in her DIB application that she became disabled as of May 1, 2002, due to post traumatic stress disorder, chronic anxiety, depression, and fibromyalgia.[2] (Tr. 35-36, 43, 46.)

*A.  Townsend's Testimony*

At the hearing, Townsend testified that she is divorced and had been living with her parents for the past five years. (Tr. 232.)  She reported that she can usually bathe and dress herself, but from time to time needs assistance from her mother to get in and out of the bathtub or shower and to fasten buttons or zippers. (Tr. 229-30.)  Townsend also confided that she was a past cocaine user but had been "drug-free" for the past four years and that she receives her health insurance through Medicaid. (Tr. 232, 235.)

When asked about her pain, Townsend testified that she suffers from a "burning sensation" in her feet, knees, hands, neck, shoulders, lower back, and buttocks, stating that it feels as if her body parts are "almost on fire." (Tr. 230.)  Townsend explained that her pain is "constant," rating it as a "nine" on a scale of one to ten with "one" being no pain and "ten" being excruciating pain. (Tr. 230.)  She also confided that pain medication does "[n]ot really" help

---

[1] The administrative record in this case is voluminous (246 pages), and the parties' disputes involve only small portions of it.  Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

[2] This appeal ultimately turns on the ALJ's failure to explicitly consider the testimony of Townsend's father, as discussed *infra* in Section VI(A); as a result, it is unnecessary to articulate a detailed summary of the medical evidence of record in this case.

reduce her pain and that there was "[n]ot really" any part of her body where she does not experience pain. (Tr. 230-31.)

### B.  Townsend's Father's Testimony

Townsend's father, Gene Williams, also testified at the hearing on Townsend's behalf. (Tr. 236-40.)  Williams reiterated that Townsend lives with him and his wife, but clarified that she essentially has her own living quarters within the house so that "she can be isolated . . . from [them] if she wants to be." (Tr. 237.)  He then essentially corroborated Townsend's testimony concerning her daily activities, though he emphasized that he and his wife "probably g[i]ve her more help than what she told you." (Tr. 237.)  He explained that he and his wife are usually with Townsend at all times and take her everywhere that she needs to go, though on occasion she will go on a brief outing with her boyfriend. (Tr. 239.)

Additionally, the ALJ asked Williams about Townsend's panic attacks.  Williams explained that "[a]nything out of the ordinary seems to upset [Townsend], and she seems to work herself up into almost a frenzy." (Tr. 239.)  He elaborated that "she kind of has to run this little routine for maybe 30 minutes or so.  After that she can start to get settled down, but it takes most of the rest of the day for her to really get back to being normal." (Tr. 239.)  He explained that these panic attacks occur "maybe twice a week." (Tr. 239.)

The ALJ also asked Williams about Townsend's sleepwalking problems, explaining that he assumed Townsend "does not have a really good recollection of her sleepwalking problems." (Tr. 238.)  Williams then described Townsend's various sleepwalking problems, which he stated "happen[] on a regular basis," explaining that "if she gets in her bed [in the evening], in the morning she will never be in her bed." (Tr. 238.)  He stated that just a few nights prior to the

4

hearing he found Townsend standing at the refrigerator in the middle of the night and then "her legs buckled, and she just fell on the floor." (Tr. 238.)  Williams also described Townsend's nightmares, reporting that at times she starts "screaming like she's terrified" during the middle of the night. (Tr. 238.)  He explained that either he or his wife will then try to wake her up to "to make her aware of where she's at and what . . . she's doing." (Tr. 238-39.)

The ALJ concluded his examination of Williams by asking him why he thought Townsend is unable to function in a work setting. (Tr. 240.)  Williams summarized: "First of all, she doesn't have the stamina to do really much of anything that I would know of.  And I don't know many employers that would allow you to lay down and rest, or work an[] hour and go home.  But mainly, I don't think physically she's really capable of doing it." (Tr. 240.)

## C.  The ALJ's Decision

On February 25, 2005, the ALJ rendered his opinion. (Tr. 11-20.)  He found at step one of the five-step analysis that Townsend had not engaged in substantial gainful activity since her alleged onset date, and at step two that she had a severe impairment with respect to her fibromyalgia, anxiety related disorder, depression, and substance abuse in early sustained remission. (Tr. 15, 19.)  However, at step three, he determined that her impairments were not severe enough to meet a listing. (Tr. 15, 19.)  Before proceeding to step four, the ALJ determined that Townsend had the following residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform a somewhat restricted range of light work.  She is limited to work involving simple routine repetitive tasks, which is goal oriented, with no production rate or piece work.  She is precluded from jobs requiring more than occasional conversations and interpersonal interactions.

(Tr. 20.)  Based on this RFC and relying upon the testimony of a vocational expert, the ALJ

concluded at step four that Townsend could not perform any of her past relevant work and that she had no transferable skills. (Tr. 18, 20.)  The ALJ then proceeded to step five where he determined that, considering her age, education, and experience, Townsend could perform a significant number of jobs in the national economy, including classifier/sorter, hand washer, laundry folder, and router clerk. (Tr. 18-20.)  When reaching this decision, the ALJ found that Townsend's claims regarding her limitations were not entirely credible. (Tr. 20.)  Therefore, Townsend's claim for DIB was denied. (Tr. 19-20.)

## IV.  STANDARD OF REVIEW

Section 405(g) of the Act grants a district court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).  The ALJ's decision must be sustained if it is supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Id.*

Under this standard, a district court reviews the entire administrative record, but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.*  Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Id.*

## V.  THE LAW

To be considered disabled under the Act, a claimant must establish that she is "[unable]

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The impairment must be severe, causing the claimant to be unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 405.1505-1511.

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] 20 C.F.R. § 404.1520; *see also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.*  The burden of proof lies with the claimant on every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## VI. ANALYSIS

Townsend alleges three errors in the Commissioner's final decision.  Specifically, Townsend asserts that the ALJ erred by: (1) failing to consider her father's testimony in making

---

[3] Before performing steps four and five, the ALJ must determine the claimant's RFC, or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

7

his credibility determination; (2) rendering a credibility determination that was not supported by substantial evidence; and (3) failing to consider as evidence her receipt of Indiana Medicaid benefits. Ultimately, one of Townsend's three arguments hits the mark.

### A. The ALJ Erred by Failing to Discuss the Testimony of Townsend's Father in Determining the Credibility of Townsend's Complaints

Townsend asserts that the ALJ erred by failing to explicitly consider the testimony of her father, Gene Williams, when determining the credibility of her complaints of debilitating limitations. Townsend's argument is convincing, insofar as the ALJ's failure to discuss the portion of Williams's testimony concerning her panic attacks, sleepwalking problems, and nightmares necessitates a remand of the ALJ's credibility determination.

Although an ALJ "need not evaluate in writing every piece of testimony and evidence submitted," when an ALJ ignores an entire line of evidence, his decision falls "below the minimal level of articulation required." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). If, however, testimony is "essentially redundant," an ALJ does not need to independently evaluate it, since the testimony is not a separate line of evidence. *Id.*; *see also Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994); *Brandenburg v. Social Sec. Admin.*, No. 104CV01376DFHWTL, 2005 WL 2148119, at *6 (S.D. Ind. Aug. 2, 2005).

In the cases cited above, the claimants brought essentially the same challenge that Townsend asserts here. In *Carlson*, for example, the claimant objected to the ALJ's failure to specifically discuss his wife's testimony, but the Seventh Circuit found that the testimony "essentially corroborated Carlson's account of his pain and his daily activities" and therefore was "essentially redundant." *Carlson*, 999 F.2d at 181; *see also Books*, 91 F.3d at 980 (finding

8

that claimant's brother's testimony was not a separate line of evidence but instead "served strictly to reiterate, and thereby corroborate, Books's own testimony concerning his activities and limitations").

Here, by Townsend's own admission, Williams's testimony regarding the effects of Townsend's fibromyalgia on her daily activities is essentially redundant and merely serves to corroborate her testimony. (*See* Opening Br. at 8) ("The main point is that each of the main sources of evidence back up each and are *generally consistent*: those sources being the . . . claimant's testimony and statements, and the father's testimony and statements.") (emphasis added).  Therefore, the ALJ did not need to specifically address this portion of Williams's testimony.  In essence, to the extent the ALJ found Townsend's testimony regarding her conditions "to be untenable when contrasted with [her] reported daily activities and the relevant medical evidence, he necessarily found [Williams's] supporting testimony similarly not credible." *Books*, 91 F.3d at 980.

Williams's testimony regarding Townsend's panic attacks, sleepwalking problems, and nightmares, however, begs a different result.  Townsend's testimony did not address these conditions,[4] and thus Williams's testimony ostensibly constitutes a separate line of evidence, obligating the ALJ to articulate his reasons for rejecting it, particularly since he deemed her anxiety-related disorders to be severe conditions. *See generally Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005) (finding an ALJ erred when he failed to give reasons based in the record for rejecting a witness's testimony that did not "merely repeat[]" the claimant's testimony").

---

[4] While Townsend's attorney alluded to the fact that Townsend had testified about her panic attacks, there is no such testimony included in the record. (*See* Tr. 235, 239.)  In fact, the hearing transcript starts rather abruptly, suggesting that perhaps the first portion of the hearing was not included in the record. (*See* Tr. 229.)  Upon remand, the Commissioner is directed to examine the transcript and conduct a new hearing if the record is indeed incomplete.

9

Therefore, the ALJ's failure to consider this portion of Williams's testimony constitutes legal error.

Accordingly, it is recommended that Townsend's case be remanded so that the Commissioner may properly consider Williams's testimony and, if necessary, conduct a new hearing to reassess the credibility of Townsend's complaints of debilitating limitations.[5]

### B.  The ALJ Did Not Err By Failing To Explicitly Consider Townsend's Receipt of Medicaid Benefits

Townsend also contends that the ALJ erred by failing to give "great weight" to her testimony that she receives Indiana Medicaid benefits. (Reply Br. at 5.)  More specifically, Townsend contends that her receipt of Indiana Medicaid benefits offers evidence of her disability, asserting that an adult without minor children must be disabled to be eligible for Indiana Medicaid and that "[t]he Indiana Medicaid system and the Social Security Disability system are very similar." (Opening Br. at 11.)  In advancing this argument, Townsend goes so far as to assert that an "ALJ may give less weight to a[n] Indiana Medicaid decision [only] if he gives persuasive, specific, and valid reasons for doing so that are supported by the record."[6] (Opening Br. at 12.)

Contrary to Townsend's argument, an ALJ "is not bound by findings made by either a governmental or nongovernmental agency concerning whether the claimant is disabled."

---

[5] Because the ALJ's credibility determination will be remanded due to the ALJ's failure to consider Williams's testimony, it is unnecessary for the Court to address Townsend's broader argument that the ALJ's credibility determination was not supported by substantial evidence. *See Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980) ("When the Secretary or the district court commits an error of law, reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings.").  Thus, at this juncture Townsend's second argument warrants no further discussion.

[6] Not surprisingly, Townsend cites no authority for this contention.

10

*Clifford*, 227 F.3d at 874 (citing 20 C.F.R. § 416.904).  Rather, an ALJ "must independently determine if a claimant is 'disabled' as defined solely in the Social Security Act." *Id*.  In short, an ALJ "is not required to (but may) consider the disability finding of other agencies." *Id*.

Clearly, under Seventh Circuit case law the ALJ was not required to consider Townsend's receipt of Indiana Medicaid benefits in reaching his determination.[7]  Thus, Townsend's final argument is utterly without merit.

## VII.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner for further proceedings in accordance with this opinion.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See* N.D. Ind. L.R. 72.1(d)(2); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Enter for this 28th day of November, 2006.

---

[7] Moreover, since Townsend did not submit her Medicaid application or decision to explain the basis for her award of Medicaid benefits, the ALJ had no evidence to consider other than simply the fact that she receives benefits.

11

               <u>S/Roger B. Cosbey</u>
               Roger B. Cosbey,
               United States Magistrate Judge